**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| DOGE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. ____________________ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| HARDEE'S RESTAURANTS LLC and | ) | |
| CKE RESTAURANTS HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

**<u>COMPLAINT</u>**

Plaintiff DOGE LLC ("Plaintiff"), by and through the undersigned counsel, brings this action against Defendants Hardee's Restaurants LLC and CKE Restaurants Holdings, Inc. (collectively, "Defendants"), and alleges as follows:

1. This is a civil action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

2. Plaintiff is the owner of all right, title, and interest in and to the copyrighted illustration entitled "Trojan Horse," created by the professional illustrator and editorial cartoonist Martin Kozlowski and registered with the United States Copyright Office under Registration No. VA 2-476-614, effective registration date September 10, 2025 (the "Work")(Ex. 1).

3. Defendants own, operate, and advertise the Hardee's chain of quick-service restaurants. On or about June 12, 2026, Defendants copied the Work, altered it by cropping it and superimposing promotional text and photographic images of Defendants' menu items onto it, and published the resulting derivative image as a paid or organic commercial advertisement for Defendants' "2 for $5 Mix n Match" promotion on the verified Hardee's accounts on Facebook and Instagram. (Exs. 2 and 3).

4. Defendants never sought or obtained a license to the Work, and Plaintiff never authorized Defendants to reproduce, adapt, distribute, or publicly display the Work. Defendants used the Work to sell food.

5. Plaintiff seeks its actual damages and Defendants' profits attributable to the infringement, an injunction against continued infringement, and such other relief as set forth below.

6. Plaintiff DOGE LLC is a limited liability company organized under the laws of the State of Delaware. Plaintiff is the copyright claimant of record and the owner by written assignment (Assignment Date: August 23, 2025) of the exclusive rights in the Work.

7. Defendant Hardee's Restaurants LLC ("Hardee's") is a limited liability company that maintains its principal office at 6700 Tower Circle, Suite 1000, Franklin, Tennessee 37067, and may be served through its registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312. Hardee's operates, franchises, and advertises the Hardee's chain of quick-service restaurants, including the verified social media accounts on which the infringing advertisements were published.

8. Defendant CKE Restaurants Holdings, Inc. ("CKE") is a corporation that maintains its principal office at 6700 Tower Circle, Suite 1000, Franklin, Tennessee 37067. CKE is the parent company of Hardee's. CKE directs, controls, approves, funds, and derives direct financial benefit from the national and regional advertising campaigns of the Hardee's brand, including the campaign at issue in this action. Upon information and belief, CKE maintains a single centralized marketing organization at its Franklin, Tennessee headquarters that develops creative assets and social-media content for the Hardee's brand, and the "2 for $5 Mix n Match" promotion and the

creative assets used to advertise it were developed, approved, and disseminated by or through that organization.

9. Upon information and belief, the infringing advertisement was created, approved, and disseminated by or at the direction of Defendants' marketing organization and/or an advertising agency retained by Defendants, acting within the scope of its agency and under Defendants' direction and control.

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under the Copyright Act, 17 U.S.C. § 101 *et seq*.

11. This Court has personal jurisdiction over each Defendant because each Defendant maintains its principal office in this judicial district, is at home in Tennessee, and conducts and at all times relevant hereto has conducted continuous and systematic business within this judicial district. In the alternative, this Court has specific personal jurisdiction over each Defendant because the acts of infringement complained of herein were directed from and occurred within this judicial district and caused injury to Plaintiff arising out of Defendants' contacts with this forum.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because each Defendant resides in and may be found in this judicial district, and because a substantial part of the events giving rise to Plaintiff's claims — including the creation, approval, and dissemination of the infringing advertisement from Defendants' corporate headquarters in Franklin, Tennessee — occurred in this judicial district.

## FACTUAL ALLEGATIONS

13. Martin Kozlowski is a professional illustrator and editorial cartoonist.

14. Mr. Kozlowski created the Work in 2015.

15. The Work depicts, in Mr. Kozlowski's distinctive graphic style, a large wooden horse on wheels being drawn on a red carpet toward the open gate of a walled fortified city, with figures in modern dress gesturing beside the gate, a watching figure atop the wall, and a stylized landscape and cloudscape in the background.

16. The Work is an original work of authorship fixed in a tangible medium of expression and is copyrightable subject matter.

17. The Work was first published in the United States in 2015.

18. Mr. Kozlowski transferred all right, title, and interest in the copyright in the Work, including all accrued and future causes of action for infringement, to Plaintiff by written agreement.

19. Plaintiff registered the Work with the United States Copyright Office. The Copyright Office assigned Registration No. VA 2-476-614, with an effective date of registration of September 10, 2025, and issued its registration decision on January 18, 2026.

20. Defendants' consumer advertising does not rely primarily on conventional broadcast or print media.

21. Defendants have instead built their marketing strategy around internet "memes" and around paid social-media influencers who create and distribute Defendants' branded content to their followers.

22. A "meme" is a discrete piece of content, most often an image and/or a unit of text, that carries a specific cultural idea or attitude, is typically humorous, and is widely recognized within the culture in which it circulates.

23. A meme's commercial value to an advertiser lies precisely in that recognition. Because the audience already knows the image and already associates it with a particular idea, an

advertiser that appropriates the image obtains immediate comprehension, humor, and shareability that the advertiser would otherwise have to build from nothing at considerable expense.

24. The more widely recognized the meme, the more valuable it is as an advertising asset.

25. The Work is such an image, and it is that recognition, together with the expression that generated it, which Defendants took and exploited for commercial gain.

26. Upon information and belief, Defendants spend millions of dollars annually on digital advertising, influencer compensation, meme and viral marketing, social-media content production, and engagement farming, activity designed to maximize impressions, reactions, comments, and shares on platforms including Facebook, Instagram, TikTok, and X.

27. Upon information and belief, Defendants' paid influencer and celebrity engagements have included, among others, the social-media personality known as "The Rizzler," Caleb Pressley, Thomas Rhett, and the social-media personality known as "Dane the Great."

28. More recently, Defendants invited consumers to "show us your meemaws" — an express play on the word "memes" — as part of a promotion built around user-generated and meme-format content. Defendants' decision to organize a national promotion around a pun on "memes" confirms that meme imagery is not incidental to Defendants' advertising but is its organizing principle.

29. Defendants accordingly know that the images and personalities deployed in their advertising belong to someone; that rights in such content are routinely licensed for money; and that an advertiser in Defendants' position is expected to pay for them. Defendants pay influencers, celebrities, talent agencies, photographers, videographers, and advertising agencies for precisely that reason.

30. Against that backdrop, and while paying substantial sums to others for content of exactly this kind, Defendants made the knowing and deliberate decision to take the Work without seeking permission, without obtaining a license, without paying any fee, and without any attribution to Mr. Kozlowski or to Plaintiff.

31. Defendants did not merely repost the Work in its existing form. Defendants manipulated the Work, cropping it and superimposing their own promotional copy and photographs of their own menu items onto Mr. Kozlowski's illustration so that it would fit within and serve their "2 for $5 Mix n Match" campaign. That alteration was the product of considered creative and commercial judgment, deliberately applied to a work Defendants knew was not their own.

32. Defendants promote their restaurants through a large and professionally managed advertising operation, including verified brand accounts on Facebook and Instagram that Defendants use to advertise limited-time price promotions to millions of consumers.

33. On or about June 12, 2026, Defendants published on the verified "Hardee's" Facebook page an advertisement for Defendants' "2 for $5 Mix n Match" promotion. The advertisement consisted of the Work, cropped and reproduced substantially in its entirety, and altered by (a) superimposing the words "our budget" over the city wall, (b) superimposing the words "2 for $5 mix and match" over the horse, (c) superimposing the word "us" over the figures at the gate, and (d) inserting a black inset panel containing photographic images of Defendants' menu items — a cinnamon roll, a plate of biscuits and gravy, a folded-egg biscuit, and a chicken biscuit — into the body of the horse (the "Infringing Advertisement"). A true and correct copy of the Infringing Advertisement as published on Facebook is attached hereto as Ex. 2.

34. The Facebook post accompanying the Infringing Advertisement read: "Get yourself a 2 for $5 Mix n Match here," followed by a tracked commercial hyperlink to Defendants' mobile-application install page at hardees-appinstall.onelink.me. The post was a commercial solicitation, the sole purpose of which was to sell Defendants' products and to drive consumer installations of Defendants' mobile application.

35. On or about the same date, Defendants published the Infringing Advertisement on the verified "hardees" Instagram account with the caption: "So that's what was really in the horse." A true and correct copy of the Infringing Advertisement as published on Instagram is attached hereto as Ex. 3.

36. The Instagram caption confirms that Defendants understood and intentionally exploited the specific pictorial content of the Work as the creative engine of their advertisement.

37. A side-by-side comparison of the Work and the Infringing Advertisement establishes that the Infringing Advertisement is a copy of the Work.

38. Every protectable element of the Work is reproduced in the Infringing Advertisement.

39. Defendants did not independently create the Infringing Advertisement. The Infringing Advertisement was copied from the Work, as demonstrated by Defendants' access to the Work and the virtual identity of the two images.

40. The Infringing Advertisement is an unauthorized reproduction of the Work under 17 U.S.C. § 106(1), an unauthorized derivative work based upon the Work under 17 U.S.C. § 106(2), an unauthorized distribution of copies of the Work under 17 U.S.C. § 106(3), and an unauthorized public display of the Work under 17 U.S.C. § 106(5).

41. Defendants' use of the Work was purely commercial. Defendants used the Work to advertise food for sale, for the purpose of generating revenue.

42. Defendants' unauthorized use has usurped the licensing market for the Work, deprived Plaintiff of the license fee to which it was entitled, and impaired Plaintiff's ability to license the Work to others, including to other advertisers in the restaurant and food-service industry, who will not license an illustration already associated with a national competitor's price promotion.

43. Defendants are sophisticated commercial advertisers who routinely license creative assets, including illustrations, photographs, music, and celebrity likenesses, for use in their advertising. Defendants know that third-party creative works must be licensed before they are used in advertising, and Defendants maintain legal and marketing personnel and vendor-clearance procedures for that purpose.

44. Defendants nevertheless reproduced and altered the Work without any license, without any attribution to the copyright owner, and without any inquiry into its ownership, or alternatively conducted such an inquiry and proceeded anyway.

45. Defendants' conduct was intentional and willful, or in the alternative was undertaken in reckless disregard of and with willful blindness toward Plaintiff's rights in the Work.

46. Defendants' willingness to pay substantial consideration to influencers, celebrities, agencies, and production companies for other creative and promotional assets, while taking Plaintiff's Work for nothing, demonstrates that the infringement was not an oversight or a clearance failure but a deliberate election to appropriate rather than to license.

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT
## 17 U.S.C. §§ 106, 501
(Against All Defendants)

47. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 above as though fully set forth herein.

48. Plaintiff owns valid and enforceable copyright in the Work and holds a certificate of registration therefor.

49. Defendants copied the Work. Defendants had access to the Work, and the Infringing Advertisement is substantially similar to — indeed virtually identical to — the protected expression in the Work.

50. Without Plaintiff's authorization or license, Defendants reproduced the Work, prepared a derivative work based upon the Work, distributed copies of the Work to the public, and publicly displayed the Work, in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106(1), (2), (3), and (5).

51. Each publication, display, and further distribution of the Infringing Advertisement constitutes a separate act of infringement.

52. Defendants' infringement was and is willful within the meaning of 17 U.S.C. § 504(c)(2).

53. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered and continues to suffer actual damages, including the lost fair-market license fee for Defendants' use of the Work and the diminution in the licensing value of the Work. Defendants have realized profits attributable to their infringing use of the Work. Plaintiff is entitled to recover its actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial.

54. Plaintiff is entitled at its election to an award of statutory damages as to such acts pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages of up to $150,000 per work for willful infringement, together with its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

55. Defendants' infringement is continuing and, unless enjoined, will continue to cause Plaintiff irreparable injury for which monetary damages alone are an inadequate remedy. Plaintiff is entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to impoundment and disposition of the infringing materials pursuant to 17 U.S.C. § 503.

**COUNT II**

**CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT**
(Against CKE Restaurants Holdings, Inc., Pleaded in the Alternative)

56. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 above as though fully set forth herein.

57. To the extent CKE did not itself commit the acts of direct infringement alleged in Count I, CKE is secondarily liable for the infringement committed by Hardee's.

58. CKE had knowledge of the infringing activity and materially contributed to, induced, and caused it by directing, approving, funding, supplying creative assets for, and providing the marketing infrastructure and social-media accounts used to disseminate the Infringing Advertisement.

59. CKE had the right and ability to supervise and control the infringing activity, including the right and ability to review, approve, modify, and remove the Infringing Advertisement, and had a direct financial interest in the infringing activity in the form of increased sales of the promoted menu items and increased installations of Defendants' mobile application.

60. CKE failed to exercise its right and ability to prevent or stop the infringement and instead derived a direct financial benefit from it.

61. Plaintiff is entitled to the same relief against CKE under this Count as is sought in Count I.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DOGE LLC respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally, and award the following relief:

A. A declaration that Defendants have infringed Plaintiff's copyright in the Work in violation of 17 U.S.C. §§ 106 and 501;

B. A permanent injunction pursuant to 17 U.S.C. § 502 restraining Defendants and their officers, agents, servants, employees, attorneys, franchisees, advertising agencies, and all persons in active concert or participation with them from reproducing, adapting, distributing, publicly displaying, or otherwise using the Work, and requiring Defendants to remove the Infringing Advertisement from all media, platforms, and channels within their control;

C. An order pursuant to 17 U.S.C. § 503 for the impoundment and destruction or other reasonable disposition of all copies of the Infringing Advertisement and all materials by means of which such copies may be reproduced;

D. An award of Plaintiff's actual damages and all profits of Defendants attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial;

E. In the alternative, and at Plaintiff's election, an award of statutory damages pursuant to 17 U.S.C. § 504(c) as to any act of infringement commenced on or after the effective date of registration, including enhanced statutory damages of up to $150,000 for willful infringement;

F. An award of Plaintiff's costs and reasonable attorneys' fees to the fullest extent permitted by 17 U.S.C. § 505;

H. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

I. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Respectfully submitted,

*<u>/s/ Howell O'Rear</u>*
Howell O'Rear (BPR #26509)
Seth M. McInteer (BPR #26471)
McInteer & O'Rear PLC
2209 Crestmoor Rd., Ste. 310
Nashville, TN 37215
howell@mcolawfirm.com
seth@mcolawfirm.com
Ph. 615-724-6207
Fax 615-523-1311

*Counsel for Plaintiff DOGE LLC*